UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAULETTE LUSTER<br>4964 East 110th Street<br>Garfield Heights, Ohio 44125 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE |
| and | )<br>) | |
| BETTY HAAS<br>2223 25th Street NE<br>Canton, Ohio 44705 | )<br>)<br>)<br>) | **PLAINTIFFS' COMPLAINT**<br><br>(Jury Demand Endorsed Herein) |
| on behalf of themselves and all others<br>similarly situated, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| vs. | )<br>) | |
| AWP INC., D/B/A AREA WIDE<br>PROTECTIVE<br>c/o Statutory Agent CT Corporation<br>System<br>1300 East 9th Street<br>Cleveland, Ohio 44114 | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

Now come Plaintiffs Paulette Luster ("Luster") and Betty Haas ("Haas"), by and through counsel, and for their Complaint against AWP, Inc., d/b/a Area Wide Protective ("AWP"), state and allege the following:

**INTRODUCTION**

1. This is a "collective action" instituted by Plaintiffs as a result of Defendant's practices and policies of not paying its traffic control specialists, including Plaintiffs, overtime compensation at the rate of one and one-half times their regular rate of pay for all of the hours

they worked over 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201-219.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. 1331 and 29 U.S.C. 216(b).

3. Venue is proper pursuant to 28 U.S.C. 1391(b) because Defendant conducts business throughout this District and Division, and a substantial part of the events and omissions giving rise to the claims occurred in this District and Division.

## PARTIES

4. At all times relevant herein, Plaintiff Luster was a citizen of the United States, and a resident of Cuyahoga County, Ohio.

5. At all times relevant herein, Plaintiff Haas was a citizen of the United States, and a resident of Stark County, Ohio

6. At all times relevant herein, Plaintiffs were employees within the meaning of 29 U.S.C. 203(e) and R.C. 4111.03(D)(3).

7. At all times relevant herein, Defendant was an employer within the meaning of 29 U.S.C. 203(d) and R.C. 4111.03(D)(2).

8. At all times relevant herein, Defendant was an enterprise within the meaning of 29 U.S.C. 203(r).

9. At all times relevant herein, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. 203(s)(1).

10. At all times relevant herein, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. 206-207.

11. Written consents to join this action as to Count I, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. 216(b).

## FACTUAL ALLEGATIONS

12. Defendant provides temporary traffic control services at work sites throughout the United States, such as one-lane flagging operations and multi-lane road closures. On a daily basis, Defendant deploys 2,000 traffic control specialists to private contractors and major public utilities throughout 19 states.

13. Plaintiff Paulette Luster was employed by Defendant between March 2015 and November 2015.

14. Plaintiff Betty Haas was employed by Defendant between October 15, 2014 and September 2016.

15. At all times relevant herein, Plaintiffs were employed by Defendant as traffic control specialists.

16. Other similarly-situated employees were employed by Defendant as traffic control specialists.

17. Plaintiffs and other similarly-situated traffic control specialists were employed by Defendant as non-exempt employees under the FLSA.

18. Plaintiffs and other similarly-situated traffic control specialists were paid an hourly wage.

**(Failure to Pay For All Hours Worked)**

19. Plaintiffs and other similarly-situated traffic control specialists drove to and from their work sites in a vehicle – a pick-up truck – provided to them by Defendant.

20. Each day, Plaintiffs' and other similarly-situated traffic control specialists' starting and ending points were either one of AWP's places of business or their homes.

21. Regardless of their starting points each day, Plaintiffs and other similarly-situated traffic control specialists were only paid for work performed between the time they arrived and left their work sites.

22. Plaintiffs and other similarly-situated traffic control specialists were not paid for performing the following work before arriving to the work sites and after leaving the work sites:

    a) Completing pre-trip inspections on AWP's vehicles;

    b) Fueling AWP's vehicles;

    c) Driving AWP's vehicles from their homes or one of AWP's places of business to the work sites, and picking up and transporting other employees;

    d) Driving AWP's vehicles from the work sites to their homes or one of AWP's places of business at the end of the day; and

    e) Completing post-trip inspections on AWP's vehicles.

23. The activities listed above constituted Plaintiffs' and other similarly-situated traffic control specialists' principal activities and/or were an integral and indispensable part of their principal activities, were required by Defendant, and were performed for Defendant's benefit.

**(Failure to Pay for Time Spent Performing Pre-Trip Inspections)**

24. At the beginning of their workday, Plaintiffs and other similarly-situated traffic control specialists performed pre-trip inspections on AWP's vehicles, filled out pre-trip inspection reports, and signed forms stating that the inspections were completed. AWP required these pre-trip inspections be completed before Plaintiffs and other similarly-situated traffic control specialists were permitted to drive to the work sites.

4

25. The pre-trip inspections included checking tire pressure; ensuring that lights, turn signals, engine, windshield wipers, and the like were operating correctly; performing a visual inspection of the vehicles for dents, damage and flat tires; checking the oil and other fluid levels; checking underneath the vehicle for leaks; and checking that they have the correct tools and equipment, such as all necessary signs, paddles, night wands, cones, walkie-talkies, flashlights, stands, etc.

26. Plaintiffs estimate that they spent approximately fifteen to twenty (15-20) minutes per day completing the pre-trip inspections.

27. Plaintiffs and other similarly-situated traffic control specialists logged their pre-trip inspections on paper forms and/or into Defendant's electronic system through the use of tablets.

28. Plaintiffs and other similarly situated traffic control specialists were required to denote in AWP's tablet device that the pre-trip inspections were completed.

29. The required pre-trip inspections were the first principal activity Plaintiffs and other similarly-situated traffic control specialists performed each workday.

30. In the alternative, the time Plaintiffs and other similarly-situated traffic control specialists spent performing their pre-trip inspections was an integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

31. The pre-trip inspections ensured that Defendant's vehicles were in working order, prevented accidents from occurring due to damaged or defective equipment, and promoted a safe and efficient working environment.

32. Additionally, Plaintiffs and other similarly-situated traffic control specialists could not perform their job duties without transporting AWP's vehicle, themselves, and their tools and equipment to the work sites.

**(Failure to Pay for Time Spent Fueling Vehicles)**

33. Plaintiffs and other similarly situated traffic control specialists fueled AWP's vehicles on a nearly daily basis, either before they drove to the work sites or on their way back from the work sites.

34. Plaintiffs estimate that they spent approximately 30 minutes per week fueling AWP's vehicles.

35. The time Plaintiffs spent fueling AWP's vehicles was a principal activity that occurred between the commencement of their first principal activity and the completion of their last principal activity each workday, and thus, was compensable under the continuous workday rule.

36. In the alternative, the time Plaintiffs spent fueling AWP vehicles was an integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

37. Plaintiffs and other similarly-situated traffic control specialists could not perform their job duties without proper fuel levels because they would be unable to transport the vehicles, themselves, and their tools and equipment to the work sites.

**(Failure to Pay for Time Spent Driving to the Work Sites)**

38. Plaintiffs and other similarly-situated traffic control specialists drove AWP's vehicles from either their homes or AWP's places of business to the work sites.

39. AWP required Plaintiff Luster to drive to her work sites from AWP's place of business.

40. AWP required Plaintiff Haas to drive to her work sites from her home.

41. Plaintiffs and other similarly-situated traffic control specialists recorded the time they left their homes, or AWP's places of business, and the time they arrived at the work sites, on paper forms or in AWP's tablet devices.

42. Plaintiffs and other similarly-situated traffic control specialists also recorded the beginning mileage of AWP's vehicles before driving to the work sites in AWP's tablet devices.

43. Plaintiffs estimate that they spent approximately three to ten (3-10) hours per week driving to the work sites.

44. Plaintiffs and other similarly-situated traffic control specialists transported tools and equipment they needed to perform their jobs, such as cones, road signs, sidewalk signs, barrels, arrow boards and paddles, to the work sites in AWP's vehicles. AWP's vehicles clearly marked AWP's business name on multiple parts of the vehicles, and were equipped with flashing lights on the top. The flashing lights alerted on-coming traffic that they were approaching a construction zone.

45. The time Plaintiffs and other similarly-situated traffic control specialists spent driving to the work sites was a principal activity that occurred between the commencement of their first principal activity and the completion of their last principal activity each workday, and thus, was compensable under the continuous workday rule.

46. In the alternative, the time Plaintiffs and other similarly-situated traffic control specialists spent driving to the work sites was an integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

47. Plaintiffs and other similarly-situated traffic control specialists could not perform their job duties without the vehicles, and without the tools and equipment contained in AWP's vehicles.

**(Failure to Pay for Time Spent Picking Up, Transporting, and Dropping Off Other Employees)**

48. Before driving to the work sites, and after completing the pre-trip inspections, Plaintiffs and other similarly-situated traffic control specialists were required to pick up other employees, at the employees' homes or at temporary employment agencies, and transport them to the work sites.

49. After leaving the work sites, Plaintiffs and other similarly-situated traffic control specialists were required to transport the employees back to their homes or temporary employment agencies.

50. Plaintiffs and other similarly-situated traffic control specialists recorded the time they picked up the employees and dropped them off.

51. Plaintiffs estimate that they spent approximately one to two (1-2) hours per week picking up, transporting, and dropping off other employees.

52. The time Plaintiffs and other similarly-situated traffic control specialists spent picking up, transporting, and dropping off other employees was a principal activity that occurred between the commencement of their first principal activity and the completion of their last principal activity each workday, and, thus, was compensable under the continuous workday rule.

53. In the alternative, the time Plaintiffs and other similarly-situated traffic control specialists spent picking up, transporting, and dropping off other employees was an integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

54. Plaintiffs and other similarly-situated traffic control specialists could not perform their job duties without a full workforce at the work sites.

**(Failure to Pay for Time Spent Driving from the Work Sites)**

55. At the end of the day, Plaintiffs and other similarly-situated traffic control specialists drove AWP's vehicles to their homes or AWP's places of business.

56. AWP required Plaintiff Luster to drive from her work sites to AWP's place of business.

57. AWP required Plaintiff Haas to drive from her work sites to her home.

58. Plaintiffs and other similarly-situated traffic control specialists recorded the time they left their work sites, and the time they arrived at their homes or AWP's places of business, on paper forms or in AWP's tablet devices.

59. Plaintiffs and other similarly-situated traffic control specialists also recorded the beginning mileage of AWP's vehicles before driving from the work sites in AWP's tablet devices.

60. Plaintiffs estimate that they spent approximately three to ten (3-10) hours per week driving AWP's vehicles from the work sites to their homes or AWP's places of business.

61. The time Plaintiffs and other similarly-situated traffic control specialists spent driving from the work sites to their homes or AWP's places of business was a principal activity that occurred between the commencement of their first principal activity and the completion of their last principal activity each workday, and thus, was compensable under the continuous workday rule.

62. In the alternative, the time Plaintiffs and other similarly-situated traffic control specialists spent driving from the work sites to their homes or AWP's places of business was an

integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

63. Plaintiffs and other similarly-situated traffic control specialists could not perform their job duties the next day without their vehicles, and without the tools and equipment contained in AWP's vehicles.  Moreover, Defendant did not want to leave its vehicles, tools, and equipment at the work sites because they could be stolen.

**(Failure to Pay for Time Spent Performing Post-Trip Inspections)**

64. At the end of their workday, Plaintiffs and other similarly-situated traffic control specialists performed post-trip inspections on AWP's vehicles, filled out post-trip inspection reports, and signed forms stating that the inspections were completed.  AWP required these post-trip inspections be completed after Plaintiffs and other similarly-situated traffic control specialists arrived at their homes or AWP's places of business at the end of each workday.

65. The post-trip inspections included checking tire pressure ensuring that lights, turn signals, engine, windshield wipers, and the like were operating correctly; performing a visual inspection of the vehicles for dents, damage and flat tires; checking the oil and other fluid levels; checking underneath the vehicle for leaks; and checking that they had all of the tools and equipment, such as all necessary signs, paddles, night wands, cones, walkie-talkies, flashlights, stands, etc.

66. Plaintiffs estimate that they spent approximately fifteen to twenty (15-20) minutes per day completing the post-trip inspections.

67. Plaintiffs and other similarly-situated traffic control specialists logged their post-trip inspections on paper forms and/or into Defendant's electronic system through the use of tablets.

68. Plaintiffs and other similarly situated traffic control specialists were required to denote in AWP's tablet device that the post-trip inspections were completed.

69. The required post-trip inspections were the last principal activity Plaintiffs and other similarly-situated traffic control specialists performed each workday.

70. In the alternative, the time Plaintiffs and other similarly-situated traffic control specialists spent performing their post-trip inspections was an integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

71. The post-trip inspections ensured that Defendant's vehicles were in working order, prevented accidents from occurring due to damaged or defective equipment, and promoted a safe and efficient working environment.

72. Additionally, Plaintiffs and other similarly-situated traffic control specialists could not perform their job duties the next day without transporting AWP's vehicles, themselves, and their tools and equipment to the work sites.

**(Failure to Pay Overtime Compensation)**

73. As a result of Defendant's practices and policies of not paying Plaintiffs and other similarly-situated traffic control specialists for all of the above-described work, Plaintiffs and other similarly-situated employees were denied significant amounts of overtime compensation.

**(Failure to Keep Accurate Records)**

74. Defendant failed to make, keep and preserve accurate records of all of the unpaid work performed by Plaintiffs and other similarly-situated traffic control specialists.

**(Defendant Willfully Violated the FLSA)**

75. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

76. Plaintiffs bring Count I of this action on their own behalf pursuant to 29 U.S.C. 216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct.

77. The class which Plaintiffs seek to represent and for whom Plaintiffs seek the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiffs themselves are members, is composed of and defined as follows:

> All current and former traffic control specialists employed by AWP, Inc. at any time between October 26, 2013 and the present.

78. At this time, Plaintiffs are unable to state the exact size of the potential class, but upon information and belief, avers that it consists of at least several thousand persons.

79. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiffs, numerous current and former employees are similarly situated with regard to their wages and claims for unpaid wages and damages. Plaintiffs are representatives of those other employees and are acting on behalf of their interests as well as their own in bringing this action.

80. These similarly-situated employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action, and allowed to opt in pursuant to 29 U.S.C. 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## COUNT ONE
### (Fair Labor Standards Act Violations)

81. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

82. Defendant's practices and policies of not paying Plaintiffs and other similarly-situated traffic control specialists for all time worked and overtime compensation at the rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 each workweek violated the FLSA, 29 U.S.C. §§ 201-219.

83. Defendant's failure to keep records of all the hours worked each workday and the total hours worked each workweek by Plaintiffs and other similarly-situated traffic control specialists violated the FLSA, 29 U.S.C. §§ 201-219, 29 CFR 516.2(a)(7).

84. By engaging in the above-described practices and policies, Defendant willfully, knowingly and/or recklessly violated the provisions of the FLSA.

85. As a result of Defendant's practices and policies, Plaintiffs and other similarly-situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, and all those similarly situated, collectively pray that this Honorable Court:

A. Issue an order permitting this litigation to proceed as a collective action;

B. Order prompt notice, pursuant to 29 U.S.C. 216(b), to all class members that this litigation is pending and that they have the right to "opt in" to this litigation;

C. Award Plaintiffs and the class they represent actual damages for unpaid wages;

D. Award Plaintiffs and the class they represent liquidated damages equal in amount to the unpaid wages found due to Plaintiffs and the class;

E. Award Plaintiffs and the class they represent pre- and post-judgment interest at the statutory rate;

F. Award Plaintiffs and the class they represent attorneys' fees, costs, and disbursements; and

G. Award Plaintiffs and the class they represent further and additional relief as this Court deems just and proper.

Respectfully submitted,

/s/ Anthony J. Lazzaro
Anthony J. Lazzaro (0077962)
Chastity L. Christy (0076977)
Lori M. Griffin (0085241)
The Lazzaro Law Firm, LLC
920 Rockefeller Building
614 W. Superior Avenue
Cleveland, Ohio 44113
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
chastity@lazzarolawfirm.com
lori@lazzarolawfirm.com
Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs demands a trial by jury on all eligible claims and issues.

/s/ Anthony J. Lazzaro
One of the Attorneys for Plaintiffs
