**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PAULETTE LUSTER, etc., et al.,** | ) | **CASE NO. 1:16CV2613** |
| | ) | |
| Plaintiffs, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **AWP, INC., d/b/a AREA WIDE** | ) | |
| **PROTECTIVE,** | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #107) of Defendant AWP, Inc., d/b/a Area Wide Protective to Dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, the Motion is granted.

**I. BACKGROUND**

Plaintiffs Paulette Luster and Isaiah Molton brought this Fair Labor Standards Act ("FLSA") collective action, on their behalf and on behalf of similarly-situated traffic control specialists, against Defendant AWP for failure to pay overtime for all hours worked over forty hours in a workweek. The operative Complaint is Plaintiffs' First Amended Complaint (ECF DKT #106) which was filed on January 10, 2020.

Defendant provides temporary traffic control services at work sites throughout the United States, such as one-lane flagging operations and multi-lane road closures.

Plaintiff Luster was employed with AWP from March of 2015 to November of 2015. Plaintiff Molton was employed with AWP from December of 2015 to July of 2016.  Plaintiffs and other similarly-situated traffic control specialists were employed as non-exempt employees under the FLSA and were paid an hourly wage.

Plaintiffs drove to and from work sites in a vehicle (pick-up truck) provided by Defendant.  The starting and ending points were either one of Defendant's places of business or Plaintiffs' homes.  However, regardless of the starting point, Plaintiffs allege that they were only paid for work performed between the time they arrived and left their work sites.

Plaintiffs allege that they were not paid for the following described work:

> a) Completing pre-trip inspections on AWP's vehicles (15-20 min./day);
>
> b) Fueling AWP's vehicles (30 min./week);
>
> c) Driving AWP's vehicles from their homes or one of AWP's places of business to the work sites, and picking up and transporting other employees (4-12 hrs./week);
>
> d) Driving AWP's vehicles from the work sites to their homes or one of AWP's places of business at the end of the day (3-10 hrs./week); and
>
> e) Completing post-trip inspections on AWP's vehicles (15-20 min./day).

(First Amended Complaint, ECF DKT #106  at ¶ 22.)

At both the initial and final vehicle  inspections of the day, Plaintiffs were allegedly required to check tire pressure; ensure that lights, turn signals, engine, windshield wipers, and

-2-

the like were operating correctly; perform a visual inspection for dents, damage and flat tires; check the oil and other fluid levels; check underneath the vehicle for leaks; and check that they had the correct tools and equipment onboard the truck, such as road signs, sidewalk signs, arrow boards, paddles, night wands, cones, walkie-talkies, flashlights, stands, etc. (*Id*., e.g. at ¶ 25). Plaintiffs were required to prepare and submit inspection reports. According to Plaintiffs' allegations, these inspections prevented accidents and promoted a safe and efficient working environment. (*Id*. at ¶ 31).

Plaintiffs allege that they could not perform their job duties without transporting the necessary tools and equipment to the job sites. (*Id*. at ¶ 44). Plaintiffs contend that they could not fulfill their job obligations without transporting co-workers from their homes or from temporary employment agencies to make up a full workforce at the job sites. (*Id*. at ¶ 54). Plaintiffs were required to log their mileage when they started out at the beginning of the day and when they left the job site to return home. Plaintiffs conclude that they could not perform their job duties without transporting Defendant's vehicle, themselves, tools and equipment to the work sites. (*Id*. at ¶ 33).

Plaintiffs assert that their pre- and post-trip duties, as well as travel time, are compensable because they were "required by and performed for the benefit of" Defendant; and/or they constituted Plaintiffs' "principal activities"; and/or they were an "integral and indispensable" part of their principal activities; and/or they fell under the "continuous workday rule."

Defendant moves for dismissal of the First Amended Complaint because Plaintiffs' overtime claims are foreclosed as a matter of law by the Portal-to-Portal Act, 29 U.S.C. § 254

("PPA") and by the Employee Commuting Flexibility Act ("ECFA") which amended it. Plaintiffs oppose the Motion to Dismiss in its entirety.

## II. LAW AND ANALYSIS

**Standard of Review - Fed.R.Civ.P. 12(b)(6)**

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). The United States Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679.

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir.2007)).

The Court should disregard conclusory allegations, including legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555; *J & J Sports Prods. v. Kennedy*, No. 1:10CV2740, 2011 U.S. Dist. LEXIS 154644, *4 (N.D.Ohio Nov. 3, 2011).

"Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations ... a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable ..." *Twombly*, 550 U.S. at 556.

**Fair Labor Standards Act ("FLSA")**

Under the Fair Labor Standards Act, all hours worked must be compensated. 29 U.S.C. §§ 206, 207. When enacted in 1938, the FLSA established a standard for minimum wage and overtime compensation for each hour worked in excess of forty hours in each workweek. However, the Act did not define the key terms "work" and "workweek." Consequently, in the years immediately following the enactment of the FLSA, those terms were described broadly.

In the early years, "work" was defined by the Supreme Court as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal, Iron and R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944).

In 1947, Congress introduced the Portal-to-Portal Act. The Act **excepted** two activities the Supreme Court previously deemed compensable: "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any

particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a).

As provided in the Department of Labor's regulations at 29 C.F.R. § 785.35 :

> An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. **Normal travel from home to work is not worktime.** (Emphasis added)**.**

However, travel from job site to job site during the workday, must be counted as hours worked**.** 29 C.F.R. § 785.38.

In 1995, the ECFA amended the Portal–to–Portal Act by adding the following language to 29 U.S.C. § 254(a):

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

The Supreme Court has consistently interpreted "the term 'principal activity or activities' [to] embrac[e] all activities which are an 'integral and indispensable part of the principal activities.'" *Integrity Staffing Solutions v. Busk*, 574 U.S. 27, 33 (2014); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29–30 (2005) (quoting *Steiner v. Mitchell*, 350 U.S. 247, 252–253, (1956)).

Thus, the PPA and the ECFA except from compensability any time spent: (1) commuting to and from work; (2) performing activities that are incidental to the use of a

company vehicle for commuting; and (3) performing all other pre- and post-liminary activities that are not "integral and indispensable"— i.e., an "intrinsic element of," and absolutely "indispensable to," the "productive work" that an employee is hired to perform.

It is no longer appropriate to focus on whether an employer required a particular activity. "The integral and indispensable test is tied to the productive work that the employee is employed to perform." *Integrity Staffing*, 574 U.S. at 36; *IBP, Inc.*, 546 U.S. at 42. "A test that turns on whether the activity is for the benefit of the employer is similarly overbroad." *Integrity Staffing*, 574 U.S. at 36.

"Shop time" is compensable when it is indispensable to the employee's principal activities. "Examples of activities during "shop time" that are integral to principal activities include reporting to a designated meeting place, receiving assignments, and loading equipment." *Chao v. Akron Insulation and Supply,* 184 Fed. App'x 508, 510 (6th Cir. 2006), *citing Hodgson v. Am. Concrete Constr. Co.*, 471 F.2d 1183, 1185–86 (6th Cir.1973). As 29 C.F.R. 785.38 further instructs: "Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice."

As for the "continuous workday rule," compensable time comprises "the period between commencement and completion on the same workday of an employee's principal activity or activities, whether or not the employee engages in work throughout all that period." *Vance v. Amazon.com, Inc.*, 852 F.3d 601, 614 (6th Cir. 2017).

The Supreme Court has instructed: "An employee who brings suit ... for unpaid

-7-

minimum wages or unpaid overtime compensation ... has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946). "However, there is an additional, earlier premise at issue [...] namely, whether the alleged acts of the plaintiff constitute compensable "work" at all. The burden to prove that such work was performed necessarily includes the burden to demonstrate that what was performed falls into the category of compensable work." *Adams v. United States*, 471 F.3d 1321, 1326 (Fed.Cir. 2006); *see, e.g., Baker v. Barnard Constr*., 146 F.3d 1214, 1216 (10th Cir.1998).

**Plaintiffs' Opposition Brief**

Consideration of a motion to dismiss under Rule 12(b)(6) is generally confined to the pleadings. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 481 (6th Cir. 2009). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. "It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss.." *Roulhac v. Southwest Regional Transit Auth*ority, No. 1:07cv408, 2008 WL 920354, at *4 (S.D. Ohio Mar. 31, 2008)).

In their Opposition Brief, Plaintiffs maintain that dismissal is not warranted because their First Amended Complaint asserts Ohio statutory overtime claims which Defendant did not challenge. (ECF DKT #110 at p. 4). However, a careful reading of Plaintiffs' Amended Complaint reveals that it is comprised of only one Count for violations of the FLSA and is devoid of any state law claims.

Additionally, the precise wording of Plaintiffs' allegations in their First Amended Complaint belies the contentions in their Opposition Brief that their preliminary and

postliminary activities constitute integral and indispensable parts of the principal activity for which they were hired. Although Plaintiffs recite at page 12 of their Brief that they were "*hired to* perform pre- and post-trip inspections on Defendant's vehicles, *hired to* fuel Defendant's vehicles, *hired to* transport tools, *hired to* transport equipment, and *hired to* transport other workers to and from the worksites; either from their homes or from AWP's required meeting locations;" the phrase "hired to" does not appear in any of the listed paragraphs: ¶¶ 22, 24, 28, 33, 44, 38, 48, 57, 64. (Emphasis added).

Also in their Opposition Brief, Plaintiffs state: "Under the FLSA, an employer must pay an employee for time spent traveling to and from another city in the same day. 29 C.F.R. § 785.37. In this case, Plaintiffs were required to travel to other cities and out of state for purposes of performing their job duties." (ECF DKT #110 at p.7). Though the regulation is quoted correctly, the First Amended Complaint is lacking any allegation of travel to other cities and states to perform Plaintiffs' job duties.

The Court must restrict itself to the "four corners" of Plaintiffs' pleading; and thus, has not considered these assertions in the Fed.R.Civ.P. 12(b)(6) analysis. *Tackett; Roulhac*.

**Plaintiffs' First Amended Complaint**

In applying the law to the allegations of the Amended Complaint, and assuming all facts to be true as the Court must, the Court finds that Plaintiffs fail to demonstrate that they are plausibly entitled to relief under the FLSA overtime provisions.

Throughout the First Amended Complaint, Plaintiffs utilize the terms, "integral and indispensable" and "principal activities." These are inappropriately formulaic terms and they represent legal conclusions that the Court need not accept as true. *Twombly*; *Iqbal*. To avoid

dismissal, Plaintiffs must allege facts showing either that their driving time by itself was inherently compensable or that Plaintiffs' commuting time included more than *de minimis* work activity.

Plaintiffs assert that they could not have performed their job duties as traffic control specialists without accomplishing tasks like logging mileage, performing and recording vehicle checks, fueling their trucks, securing their tools and equipment, and transporting co-workers to and from the job site. It is clearly alleged that Defendant required these tasks be completed and that the tasks were necessary to the safe and efficient performance of controlling traffic at road construction sites.

Courts have struggled with the distinction between incidental activities and integral and indispensable ones. "The fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity.'" *IBP, Inc.*, 546 U.S. at 40–41. "Nor does the fact that a given task increases the efficiency of a principal activity mean that it is integral and indispensable to that activity." *Brand v. Comcast, Corporation*, 135 F.Supp.3d 713, 733 (N.D.Ill. 2015), *citing Dinkel v. MedStar Health Inc.*, 99 F.Supp.3d 37, 40–43 (D.D.C. 2015). Plaintiffs here simply have not shown that the activities they highlight are intrinsic aspects of the work of a traffic control specialist or are indispensable to that work.

As noted previously, Plaintiffs allege that they were required to maintain and inspect the company-provided vehicles on a nearly daily basis. Plaintiffs additionally allege that these activities promoted safety and efficiency at the construction sites. In *Aiken v. City of Memphis, Tennessee*, 190 F.3d 753 (6th Cir. 1999), the City provided certain police officers

with vehicles for use in commuting to and from work. The officers sought compensation for the time they spent cleaning and scheduling maintenance for their city vehicles, as well as for the time spent commuting to work in them. The *Aiken* court held that "[k]eeping vehicles clean and scheduling maintenance to be done at the city's expense are hardly arduous and precisely the sort of activities that Congress had in mind when it used the phrase 'incidental to the use of [the employer's] vehicle.'" *Aiken*, 190 F.3d at 759. Looking to the legislative history of the FLSA, the *Aiken* court continued: "[R]outine vehicle safety inspections or other minor tasks have long been considered preliminary or postliminary activities and are therefore not compensable. H.R. Rep. 104–585." *Id.* Likewise, this Court finds that Plaintiffs' maintenance and inspection tasks are not compensable overtime under the FLSA.

Plaintiffs allege that they could not perform their job duties without transporting Defendant's vehicles (equipped with rooftop lights and bearing Defendant's logo), themselves, co-workers from their homes or from temporary employment agencies, and necessary tools and equipment to the work sites. Therefore, Plaintiffs insist that their preliminary activities are integral and indispensable to their productive work as traffic control specialists.

The PPA, ECFA and the relevant legislative history and case law have not made any exception for travel time in uniquely equipped or designed employer vehicles. *See, e.g.*, H.R. Rep. 104–585 ("The fact that a vehicle may been modified for special purposes, displays company logos, or is specially equipped does not alter the nature of such travel.").

In situations where employees are required to report to a designated location and there receive instructions and/or pick up and load equipment, the time would be compensable "shop

-11-

time" and the travel time would be compensable also. *Chao v. Akron Insulation and Supply*, *supra*. However, Plaintiffs' First Amended Complaint contains no allegation that Defendant assigned a meeting place where Plaintiffs "had work to do before leaving for the job site." *Id*., 184 Fed. App'x at 511.

Plaintiffs allege that they transported tools and equipment, such as signs, arrow boards, paddles, night wands, cones, walkie-talkies, flashlights, etc., which were crucial to the performance of their work; but they make no allegation that they selected or loaded necessary tools and equipment on the Defendant's truck. Plaintiffs merely allege that they had to check that they had the correct tools and equipment onboard the truck. In the *Aiken* case, the officers transported canines as part of the "Canine Squad" on the Memphis police force. Yet, the officers were not entitled to compensation for the commute time during which they cared for the dogs, necessary though they were to the performance of the officers' jobs. The activities of the Plaintiffs, like that of the Memphis police officers on the "Canine Squad," are *de minimis* and do not convert normal commute time into compensable travel time.

It bears repeating that necessary is not the equivalent of integral and indispensable. *IBP, Inc*., 546 U.S. at 40–41. Moreover, the fact that the employer requires certain tasks, or that the employees' activities benefitted the employer, is no longer the appropriate test for compensable work under the FLSA. *Integrity Staffing*.

The Court further notes that Plaintiffs' First Amended Complaint contains no allegation that Plaintiffs traveled outside the normal commuting area for their employer's business, or that no agreement between Defendant employer and Plaintiff employees exists governing the use of Defendant's vehicles, so as to take their alleged overtime activities

outside the ECFA amendment to the FLSA.

Even assuming all the well-pled factual allegations in Plaintiffs' First Amended Complaint as true, the Court finds that Plaintiffs' First Amended Complaint does not plausibly give rise to an entitlement to relief for compensable overtime under the FLSA.

### III. CONCLUSION

For these reasons, the Motion (ECF DKT #107) of Defendant AWP, Inc., d/b/a Area Wide Protective to Dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) is granted.

**IT IS SO ORDERED.**

**DATE: October 16, 2020**

                                                           s/Christopher A. Boyko
                                                          **CHRISTOPHER A. BOYKO**
                                                          **Senior United States District Judge**